UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CORIZON HEALTH, INC.** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:20-cv-0463** |
| | **JURY DEMAND** |
| **ARMOR CORRECTIONAL HEALTH** | |
| **SERVICES, INC.** | **JUDGE CAMPBELL** |
| | **MAGISTRATE JUDGE HOLMES** |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARMOR
CORRECTIONAL HEALTH SERVICES, INC.'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE OR STAY**

Defendant, Armor Correctional Health Services, Inc. ("Armor") submits this memorandum of law in support of its motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and alternatively, transfer venue for this civil action pursuant to 28 U.S.C. § 1404 or to stay this action pending resolution of another already-pending action (the "Motion"). For the reasons stated below, Armor's Motion should be granted.

## INTRODUCTION

Plaintiff Corizon Health, Inc.'s ("Corizon's") claims against Armor in this case arise out of a pending action (the "Florida Action") in the U.S. District Court for the Southern District of Florida (the "S.D. of Florida").[1] In the Florida Action, Armor seeks damages and injunctive relief against Bruce Teal ("Teal")—Armor's former CEO and current employee of Corizon—for improperly interfering with its business relationships and misappropriating its trade secrets, among other claims. As part of the Florida Action, Armor sought discovery from Corizon. *See* ECF No. 1, Corizon Complaint ("Compl.") ¶¶ 32-34. The Florida Action, including Armor's related discovery requests to Corizon, is the reason for Corizon bringing this action. *See generally* Compl.

The Complaint purports to plead multiple theories of relief based on a non-disclosure agreement between Corizon and Armor (the "NDA")[2] that allowed Armor to confidentially share certain materials with Corizon as part of a potential acquisition of Armor by Corizon (the "Potential Acquisition"). The Complaint alleges that Armor represented in the NDA that Teal was not subject to any post-employment restrictions. Reading the NDA as a whole, however, it is clear

---

[1] *Armor Corr. Health Servs., Inc. v. Teal*, No. 1:19-CIV-24656-King/Becerra (S.D. Fla.); *see* Compl. ¶ 25.

[2] The Complaint refers to the NDA as the "Corizon-Armor Contract." Corizon does not attach the NDA to the Complaint in this case. However, for the same reasons explained in footnote 5 *infra* regarding Armor's Complaint in the Florida Action, this Court, in reviewing this Motion to Dismiss, can consider the entire NDA, which Teal filed as Exhibit A to his Motion to Dismiss [Armor's] Second Amended Complaint in the Florida Action. *See* ECF No. 23-1, Florida Action.

that the NDA only covers the parties' agreement to maintain as confidential preliminary information to evaluate the possibility of the Potential Acquisition, and Armor agreed only to allow Teal to participate in the evaluation of that information. When Armor learned that Teal went beyond that narrow authorization, and that he violated restrictive covenants in Armor's employment agreement with Teal (the "Teal Employment Agreement"),[3] Armor sought to enforce those provisions and protect its confidential business information by filing the Florida Action.

Teal placed the NDA at issue in the Florida Action by claiming it precludes Armor from asserting that Teal breached the Teal Employment Agreement and the restrictive covenants therein. The NDA, however, does no such thing. The NDA, which was executed as part of the Potential Acquisition, did not amend the Teal Employment Agreement or waive Armor's rights thereunder. Further, there is not, as Corizon contends, any inconsistency between asserting that (1) Teal did not have a non-compete that precluded him from working for Corizon and (2) Teal cannot engage in business with Armor's clients while working for Corizon and using Armor's confidential business information and trade secrets to do so. Indeed, taking the Complaint at face value, it appears to allege that Corizon found such a role for Teal after the Florida Action commenced. Moreover, the Florida Action encompasses more than just claims under the Teal Employment Agreement, a point which the Complaint entirely overlooks. Nevertheless, in the Florida Action, Teal (represented by the same counsel as Corizon here) filed a motion to dismiss some of Armor's claims asserting they are barred by the NDA. Thus, the S.D. of Florida is already considering the issue that Corizon has needlessly presented to this Court.

---

[3] The Teal Employment Agreement is available at ECF No. 1-4, Compl., Ex. C, at p. 18 and is cited herein as "Teal Emp't Ag., __."

For the reasons explained herein, the Complaint should be dismissed for failure to state a claim upon which relief may be granted. In the alternative, in the interest of justice and to avoid inconsistent rulings on related issues, this Court should transfer venue to the S.D. of Florida, where the Florida Action is pending, or stay this action pending conclusion of the Florida Action.

## BACKGROUND

On March 1, 2006, Teal executed the Teal Employment Agreement in which he acknowledged and agreed that, as part of his employment with Armor, he would be in "close contact with [Armor's] confidential information . . . and its customers." Teal Emp't Ag. ¶ 4. As a result and in consideration for his employment, the Teal Employment Agreement included certain post-employment nondisclosure and non-compete provisions (the "Restrictive Covenants"). *Id.* ¶ 4(a)-(b).

He was employed as Armor's Executive for over 10 years before he resigned in November 2018. Compl. ¶ 7; *see* ECF No. 1-2, Compl., Ex. A, ¶ 10. Only a few months after Teal resigned from Armor, on January 23, 2019, Corizon sent an offer of employment to Teal. Compl. Ex. A.[4] The offer states: "Effective January 21, 2019 your position will be Client Relations and you will report directly to Stephen A. Rector, Chief Executive Officer ('CEO')." *Id.* at 4; *see* Compl. ¶ 12.

On February 5, 2019, Corizon and Armor entered into the NDA. Compl. ¶¶ 8-9. The Complaint does not attach a copy of the NDA but makes various representations as to its content. On one hand, the Complaint suggests that Armor represented that Teal was not subject to *any* post-employment restrictions. *See, e.g.*, *id.* ¶¶ 54, 62, 67. On the other hand, the Complaint includes

---

[4] The Complaint refers to this offer letter as the "Corizon-Teal Contract." The Corizon-Teal Contract is attached to the Complaint as Exhibit A (ECF No. 1-2).

more complete quotations from the NDA, which show a very different context. Paragraph 87 of the Complaint includes the most complete quotation of the language at issue:

> Armor understands that Corizon intends to engage Mr. Bruce Teal and that as part of Mr. Teal's engagement he may assist Corizon with evaluating a possible transaction between Armor and Corizon. Armor confirms that Mr. Teal is not subject to any on-going noncompetition, confidentiality or other agreement with Armor that would prohibit him from working for Corizon or otherwise assisting with a possible transaction, except for such restrictions as are imposed by this Agreement.

*Id.* ¶ 87. This suggests that, instead, the NDA was, consistent with paragraph 8 of the Complaint, a confidentiality agreement that allowed Teal to work for Corizon in furthering the Potential Acquisition. Indeed, the subject line of the NDA reads "Confidentiality of Proposed Transaction," and the substance of the NDA provides confidentiality protections for Armor to provide certain of its information to Corizon, under the auspices of allowing Corizon to determine whether to purchase Armor. The sentence Corizon purportedly seeks to enforce relating to Teal is buried on the second and third pages of the NDA, which otherwise deals with confidentiality provisions.

On July 23, 2019, Armor expressed concern that Teal was violating his duties regarding Armor's confidential information and also breaching fiduciary duties. *See id.* ¶ 18. Teal's failure to comply with the Restrictive Covenants is the subject of the Florida Action, as is the parties' intent in entering the NDA. *See generally* Fla. Compl.[5] There, Armor contends Teal fraudulently induced it to sign the NDA. *See id.* ¶ 21, Count VII.

---

[5] The operative complaint in the Florida Action is Armor's Second Amended Verified Complaint for Injunctive Relief and Damages (ECF No. 22, Florida Action) ("Armor's Complaint"). Armor's Complaint is attached hereto as **Exhibit 1** and cited as "Fla. Compl." This Court can consider Armor's Complaint without converting this Motion to a motion for summary judgment for three reasons: (1) the Complaint references Armor's Complaint; (2) Armor's Complaint is integral to the claims in the Complaint, as Armor's Complaint is the operative complaint in the Florida Action, and Corizon's theories for relief in the Complaint all arise from Armor filing the Florida Action; and (3) Armor's Complaint is a matter of public record and, therefore, appropriate for judicial notice under Federal Rule of Evidence 201. *See Commercial Money Ctr., Inc. v. Ill. Union*

Armor initially filed the Florida Action in Florida state court on October 4, 2019—less than a year after Teal resigned from Armor. Compl., ¶ 25.[6] The Florida Action was removed to the S.D. of Florida and remains pending. *Id.* Among other claims, Armor's Complaint seeks damages and injunctive relief to address Teal's "improper interference with and diversion of Armor's client[s] in knowing violation of" the Restrictive Covenants and Florida law and Teal's misappropriation of Armor's trade secrets in violation of Florida's Uniform Trade Secrets Act ("FUTSA"), § 688.01, Fla. Stat. *et seq*. Fla. Compl., 1. Notably, Armor's request for injunctive relief in the Florida Action for Teal's breach of the Restrictive Covenants is limited to barring Teal from using Armor's confidential business information and violating the Restrictive Covenants to interfere with Armor's business relationships—not from working for Corizon in any capacity at all.

Corizon was not named as a defendant in the Florida Action and is not a party to the Florida Action. *See generally id.* However, Armor served Corizon with non-party discovery, as its employment of Teal is the subject of the Florida Action. Compl. ¶¶ 32-34; *see generally* Fla. Compl. Notably, Corizon did not move for a protective order or to quash the discovery requests directed to it in the Florida Action.

On June 8, 2020, Corizon filed and served the Complaint in this case. All of the claims in the Complaint are directly related to and, in fact, arise out of the Florida Action. *See generally*

---

*Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *Thomas v. Tennessee*, 2020 WL 1545884, n.3 (W.D. Tenn. Mar. 31, 2020); *Russell Barnett Ford of Tullahoma, Inc. v. H & S Bakery, Inc.*, 398 F. Supp. 3d 287, 294 (E.D. Tenn. 2019) ("Documents attached to pleadings are considered part of the pleadings for all purposes . . . and a court's consideration of documents referred to in a complaint and integral to the claims does not convert a motion to dismiss into a motion for summary judgment."). Therefore, Armor requests that this Court take judicial notice of Armor's Complaint. To the extent the Complaint refers to Armor's Florida State Court Complaint, this Court should, instead, refer to and review Armor's Complaint—the operative complaint in the Florida Action.
[6] Armor's original complaint in the Florida Action (ECF. No.1-4) ("Armor's Florida State Court Complaint") is attached to the Complaint as Exhibit C.

Compl. Specifically, Corizon seeks to hold Armor liable for the costs it has incurred as a result of the Florida Action and Teal's alleged inability to fulfill his employment, as contemplated by the Corizon-Teal Contract, due to the Restrictive Covenants. *See generally id.*

## ARGUMENT

The Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted. Specifically, (1) Counts I-IV and VI-VII should be dismissed because they fail to state a claim, as they are directly contradicted by documents attached to the Complaint; (2) Counts I, II, III, and VI should be dismissed because they improperly seek to create a cause of action out of a discovery dispute Corizon never raised in the litigation for which the discovery was sought; (3) Counts I-VI should be dismissed because they fail to articulate a plausible claim for damages insofar as Corizon retains exclusive control over its personnel practices and legal strategy; and (4) each of Counts I-VI fail to state a claim because the factual allegations do not raise a right to relief above the speculative level. Alternatively, because the same facts and legal issues are being litigated in another federal court, this action should be transferred to the S.D. of Florida or stayed pending the outcome of the Florida Action.

## I.     Motion to Dismiss for Failure to State a Claim (Counts I-IV, VI-VII)

Pursuant to Rule 12(b)(6), this Court may review the Complaint and the exhibits attached thereto, which "are referred to in the complaint and are central to the claims contained therein." *Turner v. Welkal*, Civil No. 3:12-0915, 2013 WL 3864246, *1 (M.D. Tenn. July 23, 2013) (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)); *accord Burns v. United States*, 542 Fed. App'x 461, 466 (6th Cir. 2013); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." (citing Fed. R. Civ. P. 10(c))). In doing

so, this Court must review the Complaint "in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, this Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*; *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). To survive a motion to dismiss, the plaintiff cannot rely on "conclusory allegations in the complaint that the defendant violated the law." *16630 Southfield*, 727 F.3d at 504. As explained below, Counts I-IV and VI-VII of the Complaint fail to meet this threshold for several reasons.

**A.     The Complaint fails to state any plausible claim.**

To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts cannot make it merely possible that the defendant is liable; they must make it plausible. *Id.* Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim. *Id.* Further, conclusory statements of the elements of a cause of action are insufficient to defeat dismissal. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Here, the Complaint is fraught with unsubstantiated conclusory statements. *See, e.g.*, Compl., ¶¶ 40, 46, 52, 60, 63. Even more, the premise of the lawsuit—that Corizon alleged it would not have hired Teal but for the NDA, *see, e.g.*, *id.* ¶¶ 43, 73—is repudiated by Corizon's offer of employment to Teal, which is attached to the Complaint. Corizon's offer of employment to Teal is clearly dated January 23, 2019. Compl., Ex. A, 1. In fact, the first term of the offer states that the employment was to be effective two days prior—on January 21, 2019. *Id.* Therefore, regardless of when Teal signed the offer of employment, the Corizon-Teal Contract shows Corizon offered employment to Teal *before* entering into the NDA in February 2019. *Id.* Accordingly, the conclusory statements in the Complaint that are contradicted by the Complaint's exhibits are

insufficient to establish that the claims to which they relate are plausible. Likewise, Counts I-IV and VI-VII must be dismissed with prejudice for that reason alone.

**B.      Armor cannot be liable for requesting discovery from Corizon in the Florida Action.**

Further, the Complaint—specifically, Counts I, II, III, and VI—attempts to hold Armor liable for seeking discovery from Corizon in the Florida Action. But Armor cannot be liable for exercising its right to discovery in the Florida Action. *See* Fed. R. Civ. P. 26, 45. The Rules allow parties a broad right to seek discovery. Fed. R. Civ. P. 26, 45; *see, e.g.*, *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 770 (M.D. Tenn. 2019). Indeed, "[d]iscovery is an integral and necessary part of any civil lawsuit." *Alexander v. Wright*, No. 05-1339-T/An, 2006 WL 8435042, *2 (W.D. Tenn Nov. 7, 2006). Allowing claims like this would have a chilling effect on discovery—signaling parties should issue discovery requests with caution for fear of future liability—and thereby impose a hardship on litigants. *See id.*

Allowing Corizon to bring these claims based on Armor's discovery in the Florida Action would also undermine the litigation privilege. Tennessee courts have long recognized the litigation privilege and repeatedly emphasized its importance of maintaining "access to the judicial process." *Unarco Mat. Handling, Inc. v. Liberato*, 317 S.W.3d 227, 231 (Tenn. Ct. App. 2010) (quoting sources omitted). "The litigation privilege in Tennessee is absolute." *Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDY-DKV, 2013 WL 3992523, *10 (W.D. Tenn. 2013) (citing *Unarco Mat. Handling*, 317 S.W.3d at 238).

To the extent Corizon found the discovery in the Florida Action objectionable, it could have filed a motion for protective order or to quash. *See* Fed. R. Civ. P. 45(d)(3). Corizon did not. Instead, Corizon participated in discovery—responding to subpoenas for documents and arranging to provide deponents for deposition. Compl. ¶¶ 32-34. Corizon cannot turn participation in

discovery into a basis for independent legal action when Corizon chose not to use the tools the Rules provide to avoid the very same harm Corizon alleges it incurred.

**C.      The Complaint fails to plead any recoverable damages.**

The Complaint fails to plead any theory of recoverable damages. Rather, Corizon's alleged damages are not recoverable or traceable to Armor's actions, and Corizon failed to mitigate any damages to which it may be entitled.

*1.       Corizon's alleged damages are not recoverable or traceable to Armor's actions.*

Corizon's claims for relief in all counts of the Complaint can generally be summarized as (a) loss of the benefit of Teal's employment contemplated by the Corizon-Teal Contract, (b) costs associated with paying Teal's salary after reassigning him, and (c) attorney's fees related to discovery in the Florida Action. *See, e.g.*, Compl. ¶ 74. Regarding (a) and (b), the Corizon-Teal Contract expressly states that Teal's employment with Corizon was at-will. Compl., Ex. A, 4. Therefore, Corizon was not required to maintain Teal's employment for any reason, including once it realized Teal could not continue in the manner described in the Corizon-Teal Contract due to the Restrictive Covenants.[7]

Armor is not responsible for Corizon's decisions regarding Teal's at-will employment, which both Corizon and Teal could end at any time. *Id.* As to the balance of Corizon's alleged damages, Corizon's costs associated with responding to discovery in the Florida Action (*see* Compl. ¶¶ 32-34, 43), are neither a result of any wrongdoing by Armor nor Armor's responsibility.

---

[7] The Corizon-Teal Contract does not specify that Teal's duties at Corizon required him to engage in business with Armor's clients and use Armor's confidential information and trade secrets. The Complaint does not explain why Corizon has decided not to permit Teal to solicit new business for Corizon other than Armor's clients and, instead, has limited him to more restricted duties. Regardless, that was Corizon's choice.

And, Corizon has failed to state any theory by which Armor would be responsible for its costs associated with responding to discovery in the Florida Action.

    2.    *Corizon failed to mitigate any damages to which it may be entitled.*

An injured party generally "has a duty to mitigate damages by exercising 'reasonable care and due diligence to avoid loss or to minimize damages after suffering injury.'" *See Frank Betz Assocs., Inc. v. J.O. Clark Constr., LLC*, Civil Action No. 3:08-cv-00159, 2010 WL 2253541, *18 (M.D. Tenn. May 30, 2010) (quoting sources omitted)). Whether a party has fulfilled that duty requires the court to "examine 'whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time.'" *Id.* (citations omitted).

Again, Teal's employment with Corizon was at-will. Compl., Ex. A, 4. Therefore, if Corizon felt the continuation of Teal's employment constituted damages associated with an alleged breach of the NDA, Corizon should have ended the employment or adjusted his salary accordingly. Doing so would not have been an undue burden. *See Frank Betz Assocs.*, 2010 WL 2253541, at *18. Instead, Corizon reassigned Teal but maintained his full salary, which was not reasonable to avoid injury from an at-will employment.[8]

**D.**    **Count I: Corizon failed to state a claim for Breach of Contract.**

"In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011).

---

[8] Similarly, while Corizon's non-party discovery expenses in the Florida Action should not be recoverable as damages in this case, Corizon likewise failed to mitigate those purported damages by failing to seek entry of a protective order or to file a motion to quash as Rule 45 permits.

1.    *The Complaint rebuts Corizon's allegations that a contract existed.*

First, to establish an enforceable contract exists, the plaintiff must show that the contract "result[s] from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Russell Barnett Ford*, 398 F. Supp. 3d at 295.[9] The Complaint alleges that Armor entered into the NDA, representing that Teal was free to work for Corizon without restriction. However, the Complaint plainly states the NDA was merely "a confidentiality agreement." Compl. at ¶ 8; *see* Rest. 2d Contracts, § 3(a) ("Agreement has in some respects a wider meaning than contract, bargain or promise. . . . The word 'agreement' contains no implication that legal consequences are or are not produced.").

Likewise, paragraph 87 (quoted above) includes a more complete quote of the language at issue, which suggests the NDA was consistent with the characterization in paragraph 8. *See* Compl. ¶¶ 8, 87. Rather than a broad statement representing that Teal was free to engage in competition with Corizon—*i.e.*, the contract upon which Count I attempts to allege a breach—the language from the NDA quoted in paragraph 87 unambiguously limits the application of the statement to Teal's ability to work on the Potential Acquisition. *Id.* ¶ 87; *see* Fla. Compl. ¶ 21; *see also City of Wyandotte v. Cons. Rail Corp.*, 262 F.3d 581 (6th Cir. 2001) (Courts should "read the contract as a whole, and to give the contract language its ordinary and natural meaning."). Either there was no meeting of the minds in forming the NDA, or the Complaint attempts to improperly broaden the scope of the NDA by cherry-picking language out of one paragraph of the document. Regardless, Corizon has failed to plead that a contract even existed.

---

[9] Whether the purported contract was "free from fraud" is an issue being litigated in the Florida Action and, therefore, will be determined by the S.D. of Florida. Fla. Compl., Count VII.

2.     *Corizon has not plead that any contract has been breached.*

Corizon has not plead that Armor breached the material terms of the NDA; rather, Armor

fully performed its duties under those terms—*i.e.*, providing evaluation materials for the parties to

investigate the Potential Acquisition. *See Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 879 (6th Cir.

2007); *see also U.S. Postal Serv. v. Spodek*, No. 3:11–CV–1878, 2012 WL 2711483, *7 (N.D.

Ohio June 20, 2012) ("Mere nominal, trifling, slight or technical departures from the contract terms

are not material breaches so long as they occur in good faith."); *Black's Law Dictionary* 225 (10th

ed. 2014) (defining "breach of contract" as "[v]iolation of a contractual obligation by failing to

perform one's own promise, by repudiating it, or by interfering with another party's

performance"). Instead, the statement Corizon relies upon to allege breach, even if read broadly as

Corizon alleges, was not material to the purpose of the NDA and was not stated as a representation

and warranty.

The Complaint's characterization of the NDA as "a confidentiality agreement related to a

potential strategic transaction between the companies," Compl. ¶ 8, undermines Corizon's breach

of contract claim—indicating the scope of the alleged "contract," if a contract at all, was much

narrower, and Armor filing the Florida Action would not constitute a breach. Rather, Armor filing

the Florida Action was a good faith attempt to protect its confidential business information under

a valid contract. Thus, Corizon has failed to plead that any breach has occurred.

3.     *Corizon has not plead damages.*

"The damages recoverable for a breach of contract '. . . are limited to those reasonably

within the contemplation of the defendant when the contract was made . . . .'" *Great Am. Music*

*Mach., Inc. v. Mid-S. Record Pressing Co.*, 393 F. Supp. 877, 882 (M.D. Tenn. 1975) (quoting

sources omitted). In entering the NDA (a confidentiality agreement regarding the Potential

Acquisition), Armor could not have possibly contemplated damages related to Corizon's choices about Teal's at-will employment. Thus, Corizon has failed to state a claim for breach of contract.

**E.      Count II: Corizon failed to state a claim for Promissory Estoppel.**

To state a claim for promissory estoppel, the plaintiff must allege: "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). Tennessee courts have explained "that the doctrine of promissory estoppel is not to be liberally applied." *Id.* at 406. Rather, "its application is limited to exceptional cases [that] border on actual fraud." *Id.* This is not one of those cases.

"The key element in finding promissory estoppel is, of course, the promise," but Corizon failed to plead even that. *Id.* at 405. It is unclear what "promise" is the subject of Count II. Without the NDA, Plaintiff makes no allegation regarding any other promise. *See* Compl. ¶¶ 45-48.

Second, Corizon has not shown detrimental reliance. Detrimental reliance is "[a]n important component of the doctrine of promissory estoppel . . . because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his detriment." *Barnes & Robinson Co., Inc. v. One Source Facility Servs., Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). However, as explained above, the Complaint indicates Corizon did not rely on the NDA in hiring Teal, since the effective date of his hiring pre-dated the NDA.

Further, Corizon has not shown that it "reasonably relied on the promise to [its] detriment." Rather, as explained above, the Complaint indicates the scope of the NDA was limited to the Potential Acquisition. *See* Compl. ¶ 8. Therefore, Corizon's reliance on any promise related thereto to hire Teal outside of the Potential Acquisition was unreasonable. *See Barnes & Robinson*, 195

S.W.3d at 645 ("No injustice arises in the refusal to enforce a promise where . . . the promisee's reliance is not reasonable"). Thus, Corizon has failed to state a claim for promissory estoppel.

**F.      Counts III and IV: Corizon failed to state a claim for either Common Law Tortious Interference with Contract or a Violation of Tenn. Code Ann. § 47-50-109.**

The elements of Counts III and IV are the same. *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 659 (E.D. Tenn. 2004).[10] To state a claim for common law tortious interference with contract or a violation of section 47-50-109, Tenn. Code, the plaintiff must allege: (1) a legal contract existed; "(2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach; and (4) the defendant's actions proximately caused a breach and resulting damages." *Id.* Counts III and IV attempt to hold Armor liable for Teal's inability to fulfill his employment, as contemplated in the Corizon-Teal Contract, to which Armor is not a party.

*1.      Corizon has failed to allege that the Corizon-Teal contract was a legal contract.*

Corizon seeks to use the Corizon-Teal Contract as an end-run around valid, enforceable restrictive covenants—which courts should enforce under Tennessee law. *Bio-Med. Applications of Tenn., Inc. v. Chary*, No. W1999-01727-COA-R3-CV, 2000 WL 1634201, *11 (Tenn. Ct. App. Oct. 13, 2000). To determine whether a non-compete covenant is reasonable, courts must review the facts of each case. *Id.*; *see id.* (listing elements courts should consider "in ascertaining the reasonableness of such agreements"). More specifically, Tennessee law recognizes the importance of reasonable non-compete covenants in employment agreements. *Id.* at *11-12.

---

[10] Count IV differs from Count III in that it arises from Tennessee Code. In addition to actions based on the Florida Action being litigation protected, as discussed above, any statutory cause of action based on the Florida Action is barred since it occurred in Florida—not Tennessee. *See Telecommunications, Engineering Sales & Serv. Co., Inc. v. S. Telephone Supply Co.*, 518 F.2d 392, 394 (6th Cir. 1975); *Functional Pathways of Tenn. LLC v. Wilson Senior Care Inc.*, 866 F. Supp. 2d 918, 929-30 (E.D. Tenn. 2012).

Here, Corizon cannot fairly dispute the reasonableness of the Restrictive Covenants since Corizon similarly required Teal to execute "non-compete and non-solicitation agreement[s]" before starting his employment with Corizon. Compl., Ex. A, at 4. Notwithstanding, the Restrictive Covenants are reasonable. As consideration for the Restrictive Covenants, which were required to protect Armor's confidential information and customer relationships to which Teal was privy during his employment, Teal was employed by Armor and compensated fairly. *See* Teal Emp't Ag. ¶ 4. The threatened danger to Armor without the Restrictive Covenants was substantial. *See generally* Fla. Compl. Unfortunately, the unfair advantage caused by Teal's access to this information materialized when Teal violated the Restrictive Covenants. *See generally id.* Thus, the Restrictive Covenants are reasonable, valid, and enforceable.

Teal knew the Teal Employment Agreement remained intact when he signed the Corizon-Teal Contract. Therefore, Teal did not validly enter into the Corizon-Teal Contract. Thus, the Corizon-Teal Contract is void as against public policy and cannot be used to hold Armor liable, even assuming the theories upon which Corizon attempted to do so were viable.

2.       *Corizon failed to allege Armor knew the extent of the Corizon-Teal contract.*

In addition to failing to allege that the parties agreed the terms in the NDA have the broad meaning it alleges, Corizon has failed to allege Armor was aware of the full extent of the Corizon-Teal contract. *See* Fla. Compl. ¶ 21. Rather, Corizon has only alleged Armor was aware of Teal's employment with Corizon to work on the Potential Acquisition. Corizon has not alleged Armor was aware of either the Corizon-Teal Contract, or the extent of Teal's role at Corizon. *See id.*

3.       *Corizon failed to allege that Armor acted with malice.*

Third, notwithstanding (1) and (2), Corizon has failed to allege Armor acted with malice. All the Complaint appears to allege, despite the numerous internal inconsistencies, is Armor agreed

to allow Teal to negotiate the Potential Acquisition. Then, when Armor learned that Teal went beyond that authorization and, instead, was violating the Restrictive Covenants, it sought to enforce those provisions.

>    4.    *Corizon failed to allege breach and damages.*

Finally, Corizon failed to allege breach and damages. As discussed above, the Corizon-Teal Contract unambiguously states Teal was an employee-at-will. "Tennessee has long adhered to the doctrine of employment-at-will, which recognizes the right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 332 (Tenn. Ct. App. 2009); *see Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn. 1989) (explaining courts rarely find a third-party interferes with an at-will contract).

Consistent with this long-standing law, the express terms of the Corizon-Teal Contract provide that Corizon or Teal could "end the employment relationship with or without notice, and with or without cause at any time." Compl., Ex. A, at 4. Contrary to the allegations in the Complaint, Corizon *did* have a choice with how to address Teal's employment. *Contra* Compl. ¶ 30. It could have ended Teal's employment at any time for any reason, including the issues Corizon raises in the Complaint. *See, e.g.*, *Cummings*, 320 S.W.3d at 332. Instead, Corizon chose to modify Teal's work assignment, Compl. ¶ 30, and, by filing the Complaint in this case, attempts to shift liability to Armor. Armor cannot be liable for Corizon's choice not to terminate an at-will employment.

Further, as to Count III, the purpose of the tort of intentional interference with contract "is to deter third parties from interfering with the contractual relations of parties to a contract." *Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 789 (Tenn. 2006) (emphasis omitted). Here, the

Complaint does not allege that Armor did so. Thus, Corzion has failed to state a claim upon which relief may be granted for either Count III or Count IV.

## G.     Count VI: Corizon failed to state a claim for Negligent Misrepresentation.

To state a claim for negligent misrepresentation, the plaintiff must show the defendant "supplied information to the plaintiff meant to guide others in their business transactions; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

As shown above, the statement Corizon alleges was Armor's misrepresentation is merely a fraction of the actual statement, which indicates a completely different meaning and context. *Compare* Compl. ¶ 78, *with id.* ¶¶ 9, 87. The full statement indicates Armor did not intend to guide Corizon in transactions—*i.e.*, in feeling free to hire Teal in any capacity. *See id.* ¶¶ 9, 87. Rather, Armor intended only to allow Teal to work on the Potential Acquisition. *See id.* Indeed, Armor's Complaint pleads it only intended to allow Teal to work on the Potential Acquisition. *See* Fla. Compl., Count VII. And, had the Potential Acquisition occurred, the Restrictive Covenants would be irrelevant—the companies would be one and the same. Thus, Corizon has not stated a claim for negligent misrepresentation.

## H.     Count VII: Corizon failed to state a claim for Declaratory Judgment.

This Court has "unique and substantial discretion" in determining whether to render a declaratory judgment sought under 28 U.S.C. § 2201. *Phila. Indem. Ins. Co. v. Priority Pest Prot., LLC*, 398 F. Supp. 3d 280, 282 (M.D. Tenn. 2019); *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). This Court considers five factors in determining whether to exercise its discretion in a Declaratory Judgment Act case:

> (1) whether the declaratory judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Phila. Indem. Ins. Co.*, 398 F. Supp. 3d at 283 (citing *Amsouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004)). In this case, these factors weigh against the Court issuing a declaratory judgment.

"The first two factors in this analysis are closely related, and courts often consider them together." *Id.*[11] The first two factors also relate to the guiding policy considerations in determining whether to issue a declaratory judgment. *Savoie*, 673 F.3d at 496 (quoting *Grand Trunk W. R.R. Co. v. Cons. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). A declaratory judgment would not settle the controversy or clarify the legal relations at issue; even after a declaratory judgment from this Court, the Florida Action would remain pending. Likewise, a declaratory judgment would likely confuse the legal issues, potentially creating inconsistent judgments on the same issues.

As to the third factor, the Complaint in this case represents the quintessential "procedural fencing." *Id.* The interpretation and intent of the NDA are squarely at issue in the Florida Action. The declaratory relief Corizon seeks would directly affect the outcome of the Florida Action, especially Count VII of Armor's Complaint—creating "an arena for a race for res judicata." *Id.*

Likewise, as to the fourth factor, while a declaratory judgment would not increase friction between federal and state courts, it would *create* friction between two federal courts. Finally, there is an alternative remedy that is "better and more effective"—transferring this case to the S.D. of

---

[11] In *Philadelphia Indemnity Insurance Co.*, this Court explained that the Sixth Circuit is split on the proper interpretation of the first and second factors. 398 F. Supp. 3d at 283-84. The analysis applied is consistent with this Court's interpretation from that case. *Id.* at 284. However, regardless of the interpretation the Court applies, these factors weigh against granting declaratory relief here.

Florida. As discussed below, transfer would "avoid duplication of witnesses and evidence in parallel actions." *Phila. Indem. Ins. Co.*, 398 F. Supp. 3d at 286.

## II.   **Motion to Dismiss (Count V) for Fraudulent Misrepresentation**

As to Count V, to sufficiently plead a claim of fraudulent misrepresentation, Corizon must do so with particularity. *Ooltewah Mfg., Inc. v. Country Coach, Inc.*, No. 1:05-cv-221, 2005 WL 2671126, *4 (E.D. Tenn. Oct. 18, 2005). "The elements of fraudulent misrepresentation are: (1) misrepresentation regarding a material fact; (2) representation was made knowingly or recklessly; (3) reasonable reliance by the plaintiff; (4) resulting harm; and (5) the misrepresentation relates to an existing or past fact." *Id.* (citing sources omitted). The Complaint fails to defeat dismissal.

First, Corizon failed to particularly plead Armor's alleged misrepresentation. Notably, Armor's intention in signing the NDA is at issue in the Florida Action, where Armor plead that Teal fraudulently induced Armor to sign the NDA. *See* Fla. Compl., Count VII. Even accepting the allegations in the Complaint as true and reading the Complaint in the light most favorable to Corizon, it is unclear what the actual statement is that Corizon alleges was the fraudulent misrepresentation. While paragraph 67 states that Armor represented to Corizon that Teal was "not subject to any on-going noncompetition, confidentiality or other agreement with Armor that would prohibit him from working for Corizon," paragraph 87 appears to include a more complete quote of the language at issue, which paints a different picture:

> **Armor understands that Corizon intends to engage Mr. Bruce Teal and that as part of Mr. Teal's engagement he may assist Corizon with evaluating a possible transaction between Armor and Corizon.** Armor confirms that Mr. Teal is not subject to any on-going noncompetition, confidentially or other agreement with Armor that would prohibit him from working for Corizon **or otherwise assisting with a possible transaction, except for such restrictions as are imposed by this Agreement.**

Compl. ¶ 87 (emphasis added). *Cf. id.* ¶ 9. The emphasized text, which is omitted from the allegations for Count V in the Complaint, clearly changes the meaning of the language at issue. Rather than a broad statement representing that Teal was free to engage in competition with Armor, the language unambiguously limits the statement to Teal's ability to work on the Potential Acquisition. Thus, Corizon has not even plead the first element of fraudulent misrepresentation. For these same reasons, Corizon has not plead that Armor knowingly or recklessly made this representation, or that the misrepresentation relates to an existing or past fact. Rather, Corizon has failed to plead with particularity any misrepresentation.

Further, as explained above, Corizon's attempt to plead reasonable reliance is belied by the fact that it offered employment to Teal before entering into the NDA. Also, Corizon has not established any resulting harm of any misrepresentation. Thus, the Complaint fails to state a claim for fraudulent misrepresentation, and this Court should dismiss Count V of the Complaint.

### III.    Motion to Transfer Venue (In the Alternative to the Motion to Dismiss)

In the alternative to dismissal, this Court should transfer venue to the S.D. of Florida pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)").[12] Section 1404(a) gives district courts broad discretion to determine when party convenience or the interest of justice make transfer appropriate. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).

---

[12]After transfer, the S.D. of Florida can decide whether to dismiss the Complaint on the merits. The Declaration of Manuel Fernandez in Support of Armor Correctional Health Services, Inc.'s Motion to Transfer Venue (the "Fernandez Declaration" or "Fernandez Decl.") is attached hereto as **Exhibit 2**. The Declaration of Jessica T. Travers in Support of Armor Correctional Health Services, Inc.'s Motion to Transfer Venue (the "Travers Declaration" or "Travers Decl.") is attached hereto as **Exhibit 3**. The Fernandez Declaration and Travers Declaration are referenced collectively as the "Declarations," and are only submitted in support of Armor's request to transfer or stay this action.

To determine whether transfer is appropriate under Section 1404(a), this Court must first determine the availability of an adequate alternative forum. *Kerobo*, 285 F.3d at 537. Then the Court reviews factors related to the convenience of the parties and the public interest. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W. Dist. Tex.*, 571 U.S. 49, 61 (2013); *see Rustal Trading US, Inc. v. Makki*, 17 Fed. App'x 331, 335 (6th Cir. 2001); *Sacklow v. Sakes Inc.*, 377 F. Supp. 3d 870, 882 (M.D. Tenn. 2019). As explained below, transfer is appropriate here because it would be more convenient for the parties and in the interest of justice—most significantly, it would avoid inconsistent judgments on the similar and related issues in this case and the Florida Action. *See Plantronics, Inc. v. Clarity, LLC*, No. 1:02-cv-126, 2002 WL 32059746, *2 (E.D. Tenn. July 17, 2002) ("Transfer . . . promotes judicial efficiency, avoids duplication of litigation, and avoids piecemeal litigation and the danger of inconsistent judgments.").

## A.     The S.D. of Florida is an adequate alternative forum.

In this case, the S.D. of Florida is an adequate alternative forum. As explained in the Declarations, Armor and Teal are already involved in the Florida Action in which Corizon has participated. Fernandez Decl. ¶¶ 4-5; Travers Decl. ¶¶ 3-5. And, Corizon is funding Teal's defense and is represented by the same counsel. Travers Decl. ¶ 4. Thus, Armor has satisfied this initial determination.

## B.     The private interests, specifically the parties' convenience, weigh in favor of transfer.

Convenience is the "central focus" of the transfer analysis. *Stewart v. Dow Chem. Co.*, 865 F.2d 103 (6th Cir. 1989) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 239, 249 (1981). Factors related to the convenience of the parties that the Court may review include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of

a case easy, expeditious and inexpensive." *Atl. Marine Constr.*, 134 S. Ct. at n.6 (quoting *Piper Aircraft*, 454 U.S. at n.6).

While the plaintiff's choice of forum is to be considered, *id.*, it is not dispositive and the balance strongly favors transfer in this case. *See Reese*, 574 F.3d at 320. As explained in the Declarations, it would be most convenient, cost-effective, and efficient for all parties to transfer this case to the S.D. of Florida where it can be litigated with the Florida Action. Fernandez Decl. ¶¶ 6-8; Travers Decl. ¶¶ 8-11. Where transfer is most convenient, cost-effective, and efficient for *all* parties, Courts are willing to do so. *See, e.g.*, *Cont'l Grain Co. v. The FBL*-585, 364 U.S. 19, 21 (1960); *Sacklow*, 377 F. Supp. 3d at 881.[13] Indeed, the purpose of Section 1404(a) was to allow parties to avoid duplicative discovery and litigation. *See, e.g.*, *Cont'l Grain Co.*, 364 U.S. at 21.

**C.      The public interests, including the interest of justice, weighs in favor of transfer.**

Public interest factors the Court may consider include "(1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008); *accord Atl. Marine Constr.*, 134 S. Ct. at 581 n.6. This analysis includes the interests of justice, which considers judicial economy and the avoidance of inconsistent judgments. *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)); *see North v. McNamara*, 47 F. Supp. 3d 635, 646 (S.D. Ohio 2014).

---

[13] Corizon could have sought to intervene in the Florida Action but did not. Fed. R. Civ. P. 24; Travers Decl. at ¶ 5.

First, enforcing any judgment against Armor would occur in Florida—its state of incorporation and principal place of business. Fernandez Decl. ¶ 3; Travers Decl. ¶ 15. As to trial management, it would be easier for the parties to manage and litigate one case rather than two. *See* Fernandez Decl. ¶¶ 6-8; Travers Decl., ¶ 11. Likewise, statistics regarding the congestion of this Court and the S.D. of Florida, as well as the progress of this case compared to the Florida Action, indicate that the parties can reach a conclusion on the issues presented in this case in the S.D. of Florida sooner than in this Court. Travers Decl., ¶¶ 7, 13. Courts routinely compare which courts are the busiest in determining whether transfer is in the interest of justice. *See Cont'l Grain Co.*, 364 U.S. at 21; *Zimmer Enters.*, 478 F. Supp. 2d at 992.

Further, this case does not necessarily present a localized controversy. Fernandez Decl. ¶¶ 5-6; Travers Decl. ¶¶ 5-6. Rather, Corizon seeks to litigate the existence of the Florida Action in this Court based on actions that occurred in Florida. Fernandez Decl. ¶¶ 4-5; Travers Decl. ¶¶ 5-6; *see Encore Med., L.P. v. Kennedy*, 861 F. Supp. 2d 886, 896 (E.D. Tenn. 2012) (stating that courts have "an interest in litigating a dispute that involves its own citizens and allegedly tortious conduct that occurred on its own soil"). The only public interest factor weighing against transfer is having this Court apply Tennessee law. But that factor is not dispositive, especially since a ruling in the Florida Action could render some or all of the claims in this case moot. Travers Decl. ¶ 14.

Transferring this case to the S.D. of Florida will allow the parties to seek consolidation of this case with the Florida Action and, therefore, avoid inconsistent rulings on these similar and related issues. Travers Decl. ¶¶ 12, 14. Transfer is "favored and appropriate" where it will "eliminate the risk of inconsistent rulings, conserve judicial resources, reduce litigation costs, and permit the case to proceed in the most efficient manner in the preferable convenient venue." *Sacklow*, 377 F. Supp. 3d at 882; *see Plantronics*, 2002 WL 32059746, at *2 ("Comity requires

that federal district courts . . . be careful to avoid unnecessary interference with each other's affairs."). Some courts consider this factor dispositive in ruling on a motion to transfer. *See McNamara*, 47 F. Supp. 3d at 646. Thus, the public interests factors weigh in favor of transfer, and transfer is in the interest of justice.

**D.      The First-Filed Rule supports transfer.**

Additionally, the first-filed rule supports transfer to the S.D. of Florida. The first-filed rule "is a doctrine of federal comity that promotes judicial efficiency" and generally applies "when duplicative lawsuits are pending in separate federal courts." *Thomas v. Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 995 (W.D. Tenn. 2002). The rule "is designed to avoid the waste of duplication of effort by two co-equal district courts, to avoid rulings by one district court that may interfere with or trench upon the authority of another district court, and to avoid inconsistent or piecemeal resolution of legal issues that call for a uniform result." *Plantronics*, 2002 WL 32059746, at *2.

Under this rule, "the entire action should be decided by the court in which an action was first filed." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688-89 (E.D. Tenn. 2005) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)); *accord Plantronics*, 2002 WL 32059746, at *3. It is in this Court's discretion "whether to apply the rule," *Fuller*, 370 F. Supp. 2d at 688-89. If this Court applies the first-filed rule, it has "discretion to transfer the duplicative suit, issue a stay, or dismiss the complaint." *Reinsdorf v. Academy, Ltd.*, No. 3-13-0269, 2013 WL 2149673, *2 (M.D. Tenn. May 16, 2013).

This case and the Florida Action are duplicative lawsuits. *See* Fernandez Decl. ¶¶ 5, 7-8; Travers Decl. ¶¶ 5-6, 10; *Reinsdorf*, 2013 WL 2149673, at *2 (defining "duplicative suit"). This case is a direct result of the Florida Action. Fernandez Decl. ¶ 5; Travers Decl. ¶ 6. While not identical, the parties are all related. Travers Decl. ¶ 4. The claims arise from the same facts, and

the issues are directly related. Fernandez Decl. ¶ 5; Travers Decl. ¶¶ 5-6. In other words, "the parties and issues substantially overlap." *Reinsdorf*, 2013 WL 2149673, at *2. No exception to the first-filed rule applies here. Fernandez Decl. ¶ 10. That Armor filed its suit in the S.D. of Florida first does not indicate forum shopping or an anticipatory lawsuit. *See Plantronics*, 2002 WL 32059746, at *3. Thus, this Court should apply the first-filed rule.

## IV.   Motion to Stay (in the Alternative to the Motion to Transfer)

In the alternative to transfer, this Court should stay this case pending resolution of the Florida Action. Pursuant to the first-filed rule, this Court has the discretion to either transfer or stay this case (the second-filed action) pending the outcome of the Florida Action (the first-filed action). *See Reinsdorf*, 2013 WL 2149673, at *2; *Fuller*, 370 F. Supp. 2d at 688-89.

For the same reasons this Court should transfer this case to the S.D. of Florida, in the alternative, this Court should stay this action pending resolution of the Florida Action. Each count of Armor's Complaint references the NDA. *See generally* Fla. Compl. So, any ruling from the S.D. of Florida regarding the validity or meaning of the NDA would affect the issues in this case. Likewise, proceeding with this case while the Florida Action remains pending will cause unnecessary duplicative efforts. Thus, in the interest of justice and preserving judicial resources, this Court should stay this case pending resolution of the Florida Action.

WHEREFORE, Defendant, Armor Correctional Health Services, Inc., respectfully requests this action be dismissed with prejudice. Alternatively, Armor requests this action be transferred to the U.S. District Court for the Southern District of Florida or stayed pending an adjudication on the merits of the claims in the case styled *Armor Correctional Health Services, Inc. v. Teal*, currently pending in the U.S. District Court for the Southern District of Florida.

## <u>LOCAL RULE 7.01(a)(1) CERTIFICATE OF COUNSEL</u>

In accordance with Local Rule 7.01(a)(1), the undersigned counsel hereby certifies that she conferred with Corizon's counsel regarding the relief requested in the Motion to Transfer or, in the alternative, the Motion to Stay and that Corizon was unable to agree to the relief requested in this Motion.

Respectfully submitted,

**SIMS|FUNK, PLC**

s/ *Grace A. Fox*
W. Scott Sims
Grace A. Fox
3322 West End Avenue, Suite #200
Nashville, TN 37203
(615) 292-9335
ssims@simsfunk.com
gfox@simsfunk.com

and

**AKERMAN LLP**

s/ *Jessica T. Travers*
Jessica T. Travers (Florida Bar # 18129)*
Aleksas A. Barauskas (Florida Bar # 68174)*
50 N. Laurel St., Suite 3100
Jacksonville, FL 32202-3646
(904) 798-3700
(904) 798-3730 (facsimile)
jessica.travers@akerman.com
aleksas.barauskas@akerman.com

and

Melanie Kalmanson (Florida Bar # 123855)*
201 E. Park Ave., Suite 300
Tallahassee, FL 32301
(850) 224-9634
(850) 222-0103 (facsimile)
melanie.kalmanson@akerman.com

*Attorneys for Defendant Armor Correctional Health Services, Inc*


*\* Pro Hac Vice Motions Pending*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on the following

individuals via the Court's CM/ECF system on June 29, 2020:

Russell B. Morgan
Kimberly M. Ingram
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
rmorgan@bradley.com
kingram@bradley.com

*s/ Grace A. Fox*